**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on July 24, 2024**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** _____ |
| | : | |
| **v.** | : | **VIOLATIONS:** |
| | : | |
| **DENIS POSTOVOY** | : | **18 U.S.C. § 371** |
| | : | **(Conspiracy to Defraud the United States)** |
| | : | |
| **Defendant.** | : | **50 U.S.C. § 4819** |
| | : | **(Export Control Reform Act)** |
| | : | |
| | : | **18 U.S.C. § 554** |
| | : | **(Smuggling)** |
| | : | |
| | : | **18 U.S.C. § 1956(h) (Conspiracy to** |
| | : | **Commit Money Laundering)** |
| | : | |
| | : | **FORFEITURE:** |
| | : | **18 U.S.C. § 981(a)(1)(A)** |
| | : | **18 U.S.C. § 981(a)(1)(C) and** |
| | : | **21 U.S.C. § 853(p)** |

## INDICTMENT

### INTRODUCTION

The Grand Jury charges that, at times material to this Indictment:

1.        Since at least February 2022, DENIS POSTOVOY ("POSTOVOY"), engaged in the procurement and illicit export of U.S.-origin and other microelectronics that can be used in a variety of civil and military applications, including unmanned aerial vehicles ("UAVs" or "drones"). Through a web of companies that he owns and/or operates in Russia, Hong Kong, and elsewhere, POSTOVOY purchased microelectronics from U.S.-based and foreign-based distributors and exported them to Russia without the required licenses.

2.        In the course of exporting the microelectronics from the United States and other

places, POSTOVOY repeatedly concealed and misstated the true end users and end destinations by submitting false information on documents, transshipped items that were ultimately destined for Russia through intermediary destinations, including Hong Kong, Switzerland, and Estonia, and received payments in U.S. dollars from foreign bank accounts.

3.     After Russia's full-scale invasion of Ukraine on February 24, 2022, and the imposition of expanded restrictions on the export of microelectronics to Russia, POSTOVOY continued to export controlled microelectronics to Russia despite knowing that such exports required a license from the Department of Commerce, located in Washington, D.C., which neither he nor his co-conspirators applied for or obtained.

<u>THE DEFENDANT AND CO-CONSPIRATORS</u>

4.     Defendant DENIS POSTOVOY was a Russian citizen residing in the United States who was engaged in the business of procuring and exporting microelectronics.

5.     POSTOVOY owned and/or controlled the following companies in Hong Kong, Russia, and the United States: WowCube HK Limited ("WowCube," located in Hong Kong); JST Group Hong Kong ("JST," located in Hong Kong); Jove HK Limited ("Jove," located in Hong Kong); and Vector Group ("Vector," located in Russia).

6.     Streloy E Commerce (a/k/a, Streloi Ekommerts) ("Streloy") was located in St. Petersburg, Russia, and was sanctioned by the U.S. Government in December 2023. Streloy was one of POSTOVOY's customers.

7.     "Russian Company-1," whose identity is known to the Grand Jury, was located in Zelenograd, Russia and was one of POSTOVOY's customers.

8.     "Swiss Company-1," whose identity is known to the Grand Jury, was owned and/or controlled by Co-conspirator-1 and was used by POSTOVOY to obtain sensitive microelectronics

from U.S. companies, including U.S. Company-1, for transshipment to Russia.

9.      "Turkish Company-1," whose identity is known to the Grand Jury, was located in Turkey and was used by POSTOVOY and Streloy to transship items to Russia.

10.     "UC Company," whose identity is known to the Grand Jury, was a U.S.-based company operated in an undercover capacity by a U.S. Government law enforcement agency. POSTOVOY ordered an export-controlled microcontroller used in drone design and manufacturing from the UC Company. This component was classified as Export Control Classification Number ("ECCN") 3A991.a2 on the Commerce Control List ("CCL") and, after February 24, 2022, required an export license to be shipped from the United States to Russia, including through an intermediate destination such as Hong Kong.

11.     "U.S. Company-1," whose identity is known to the Grand Jury, was a U.S.-based distributor of semiconductors and electronic components. U.S. Company-1 shipped an export-controlled item used in drone design and manufacturing—an STM Microcontroller (manufactured by STMicroelectronics, a Dutch company)—to both POSTOVOY and Co-conspirator-1. This component was classified as ECCN 3A991.a on the CCL and, after February 24, 2022, required an export license to be shipped from the United States to Russia, including through an intermediate destination such as Hong Kong.

12.     "U.S. Company-2," whose identity is known to the Grand Jury, was a U.S.-based distributor of semiconductors and electronic components. U.S. Company-2 was scheduled to ship an export-controlled item used in drone design and manufacturing—an XMOS Microcontroller (manufactured by XMOS, a United Kingdom company)—to POSTOVOY. This component was classified as ECCN 3A991.a2 on the CCL and, after February 24, 2022, required an export license to be shipped from the United States to Russia, including through an intermediate destination

such as Hong Kong.

13.     "Co-conspirator-1," whose identity is known to the Grand Jury, was the Managing Director of Swiss Company-1, which POSTOVOY used to transship items, directly and indirectly, to Russia.

14.     "Co-conspirator-2," whose identity is known to the Grand Jury, was a citizen of Russia and was one of POSTOVOY's employees, who served in various roles, including as Purchasing Manager for Jove, one of POSTOVOY's Hong Kong-based companies.

<u>THE EXPORT CONTROL REFORM ACT</u>

15.     On August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which included the Export Control Reform Act ("ECRA"). *See* 50 U.S.C. § 4801 *et seq.* ECRA provided permanent statutory authority for the Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Parts 730-774.

16.     ECRA provided that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specified activities of United States persons, wherever located, be controlled." 50 U.S.C. § 4811. To that end, ECRA granted the President the authority to "(1) control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812. ECRA granted to the Secretary of Commerce the authority to establish the applicable regulatory framework. 50 U.S.C. § 4813.

17.     Through the EAR, the U.S. Department of Commerce's Bureau of Industry and Security ("BIS") reviewed and controlled the export from the United States to foreign destinations of certain items. In particular, BIS placed restrictions on the export and reexport of items that it

determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depended on several factors, including the technical characteristics of the item, the destination country, the end user and the end use of the item.

18.      The most sensitive items subject to EAR controls were identified on CCL set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items listed on the CCL were categorized by ECCNs, each of which was subject to export control requirements depending on destination, end use and end user of the item.

19.      Since Russia's full-scale invasion of Ukraine on February 24, 2022, BIS has implemented a series of stringent export controls that restrict Russia's access to the technologies and other items that it needs to sustain its attack on Ukraine. As of April 8, 2022, license requirements for exports, reexports and transfers to or within Russia were expanded to cover all items on the CCL. *See* 87 Fed. Reg. 12226 (Mar. 3, 2022); 87 Fed. Reg. 22130 (Apr. 14, 2022); 15 C.F.R. § 746.8.

20.      Under ECRA, it was a crime to willfully violate, attempt to violate, conspire to violate or cause a violation of any regulation, order, license or authorization issued pursuant to the statute, including the EAR. *See* 50 U.S.C. § 4819(a)(l).

## COUNT ONE
**Conspiracy to Commit an Offense Against the United States and to Defraud the United States, in violation of Title 18, United States Code, Section 371**

### THE CONSPIRACY

21.      Between at least in or about February 2022 and continuing to the present, the exact dates being unknown to the Grand Jury, in the District of Columbia and elsewhere, the defendant, DENIS POSTOVOY, and others, known and unknown to the Grand Jury, did knowingly combine,

conspire, confederate, and agree together and with each other, to commit offenses against the United States and to defraud the United States, as follows:

    a.   to willfully export and cause the exportation of goods from the United States to Russia without first having obtained the required licenses from the Department of Commerce in violation of Title 50, United States Code, Section 4819(a), and Title 15, Code of Federal Regulations, Sections 736.2, 746.8, and 764.2;

    b.   to fraudulently and knowingly export and send and attempt to export and send from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, and receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to laws and regulations of the United States, in violation of Title 18, United States Code, Section 554;

    c.   to cause the transfer of funds from a place outside of the United States to a place in the United States in promotion of a specified unlawful activity, that is smuggling, in violation of Title 18, United States Code, Section 1956; and

    d.   to defraud the U.S. Government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations controlling the export of goods from the United States, by deceit, craft, trickery, and dishonest means.

22.    The allegations made in paragraphs 1 through 14 are hereby realleged and incorporated by reference herein.

GOALS OF THE CONSPIRACY

23.     The goals of the conspiracy were:

a.   to acquire, on behalf of entities in Russia, microelectronics and other sensitive technologies that were manufactured and/or sold in the United States;

b.   to export microelectronics and other sensitive technologies from the United States directly and indirectly to Russia and to Russian end users, including through intermediary destinations, such as Hong Kong;

c.   to conceal through dishonest means the prohibited activities and transactions from detection by the U.S. Government so as to avoid penalties and disruption of the illegal activities;

d.   to profit through these illegal activities; and

e.   to undermine the efforts of U.S. Government agencies to enforce export laws and regulations by evading the prohibitions and licensing requirements of ECRA and the EAR.

MANNER AND MEANS OF THE CONSPIRACY

24.     Defendant POSTOVOY and other co-conspirators, known and unknown to the Grand Jury, used the following manner and means, among others, to accomplish the objects of the conspiracy:

a.   POSTOVOY and other co-conspirators, including Co-conspirator-1, Co-conspirator-2, and individuals associated with Streloy, used email and other means to communicate;

b.   Vector, Co-conspirator-2, and individuals associated with Streloy, among others, solicited quotes from and negotiated with POSTOVOY for the procurement of

7

microelectronics and other sensitive technologies;

c.  POSTOVOY purchased items or caused items to be purchased from companies in the United States to fulfill orders from Russian customers, including by providing false information to the U.S. companies;

d.  POSTOVOY and other co-conspirators, including Co-conspirator-1, Co-conspirator-2, and individuals associated with POSTOVOY's other companies, arranged for shipment of the microelectronics and other sensitive technologies from the United States to transshipment points in Hong Kong, Switzerland, and elsewhere, to conceal the true end users and end destinations in Russia;

e.  POSTOVOY and individuals associated with POSTOVOY's companies transferred funds for the purchase and shipment of the goods through bank accounts in Hong Kong and elsewhere to bank accounts in the United States maintained by POSTOVOY, U.S. Company-1, or other U.S. suppliers of microelectronics and other sensitive technologies; and

f.  POSTOVOY and other co-conspirators caused the microelectronics and other sensitive technologies to be exported from the United States to individuals and entities in Russia without obtaining the required licenses from the U.S. Department of Commerce.

<u>FAILURE TO OBTAIN A LICENSE</u>

25.     During the relevant time period, the below items were identified on the CCL, classified by BIS under the corresponding ECCNs, and controlled for anti-terrorism reasons. As of February 24, 2022, an export license was required from the Department of Commerce to export or reexport each of these items to Russia.

| Exported Item | ECCN |
|---|---|
| STMicroelectronics        STM32G491CCU6 Microcontrollers | ECCN 3A991.a |
| XMOS        XEF216-512-TQ128-I20A Microcontroller | ECCN 3A991.a2 |
| Infineon        SAK-XC2785X-104F80LR Microcontrollers | ECCN 3A991.a2 |

No person, including Defendant POSTOVOY, sought or obtained the required licenses from the Department of Commerce, which is located in Washington, D.C., in order to lawfully conduct the commercial transactions and related shipments and wire transfers set forth in this Indictment.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

26.     In furtherance of the conspiracy and to achieve the objects thereof, the defendant POSTOVOY and co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Columbia and elsewhere:

## TRANSACTION WITH U.S. COMPANY-1

27.     On or about March 8, 2021, POSTOVOY—acting on behalf of his Russia-based company, Vector—signed a contract with Jove, one of his companies located in Hong Kong. The contract, identified as Contract No. 03/21-01 (the "Contract"), governed the purchase of items procured by Jove that would be exported to Vector in Russia. Under the contract, Jove was identified as the "Supplier" and Vector was identified as the "Buyer." Pursuant to the Contract, Jove, as the supplier/seller, would sell and Vector, as the buyer, would purchase specific components and quantities that would be detailed in subsequently executed addenda to the Contract. For each shipment, Jove was required under the Contract to include a commercial invoice, with reference to the Contract and the terms of delivery, and a packing slip.

28.     On or about May 6, 2022, Jove and Vector executed "Specification 16 to the Contract No. 03/21-01," which identified the components to be shipped as 1,000 pieces of a

"microcontroller" with part number STM32G491CCU6 (the "STM Microcontroller") and 1,200 pieces of "Electronic module Eazy ECG USB" (the "Eazy USB").

29.     On or about May 23, 2022, Jove placed two orders with U.S. Company-1 for 40 pieces of the STM Microcontroller.

30.     On or about July 13, 2022, Jove paid U.S. Company-1 for these components via a wire transfer originating from Jove's account at "Multinational Financial Institution-1," whose identity is known to the Grand Jury, in Hong Kong. The wire, totaling $15,237, was deposited into U.S. Company-1's account in the United States. U.S. Company-1's business records further show that, while the "bill to" party for the order was Jove, the recipient of the components was JST, a separate company based in Hong Kong that was owned by POSTOVOY.

31.     The actions of POSTOVOY and his co-conspirators caused U.S. Company-1 to export 40 pieces of the STM Microcontroller from the United States to JST in Hong Kong on or about May 23, 2022 and on or about May 24, 2022. The true ultimate consignee of these components was Vector, located in Russia, a fact not disclosed to U.S. Company-1.

32.     Beginning on or about May 20, 2022, POSTOVOY also arranged for several hundred pieces of the STM Microcontroller to be purchased from U.S. Company-1 by Co-conspirator-1 using Swiss Company-1. Over the ensuing weeks, POSTOVOY caused Co-conspirator-1 to procure over 1,000 pieces of the STM Microcontroller from U.S. Company-1, take delivery of these components in Switzerland and then, at POSTOVOY's direction, export the items ultimately to Russia via Hong Kong or Europe.

33.     On or about June 8, 2022, Jove sent a commercial invoice to Vector for 1,000 pieces of the STM Microcontroller and 1,200 pieces of the Eazy USB. The commercial invoice identified the Contract and a previously issued proforma invoice, and it also listed POSTOVOY

as the point of contact for Vector. As required by the Contract, the invoice included the "terms of transportation." The total price of the items was listed as $246,840 and was denominated in U.S. Dollars.

34.     Also on or about June 8, 2022, Jove submitted a packing list. Provision of a packing list was required under the Contract. The packing list identified Jove as the exporter/shipper and Vector as the importer/consignee. It also stated that the contents of the shipment included 1,000 pieces of the STM Microcontroller and referenced Proforma Invoice 16 of May 6, 2022.

35.     On or about June 8, 2022, Jove submitted customs documents to the Russian Customs Clearance Department. These documents, translated from Russian, stated that the import to Russia contained 1,000 pieces of the STM Microcontroller and 1,200 pieces of the Eazy USB. The documents identified the seller as Jove and the "Declarant" as Vector.

36.     On or about June 28, 2022, the actions of POSTOVOY and his co-conspirators caused the following financial transactions to occur: U.S. Financial Institution-1, located in the United States and acting as the intermediary bank for an international wire transfer, received $315,499 from Rosbank in Moscow, Russia. The originator of the transfer was Vektor Grupp (*i.e.*, Vector) and the beneficiary was the account for Jove at Multinational Financial Institution-1 in Hong Kong. The "remittance information" accompanying the wire transfer was "payment by invoices No. 015 and No. 016" "for goods." This amount matches the sum of the invoices for Specification 16 and a separate Specification to the Contract. U.S. Financial Institution-1 then forwarded the $315,499 to the correspondent account of Multinational Financial Institution-1 (Hong Kong) at Multinational Financial Institution-1 (New York).

<u>TRANSACTION WITH THE U.S. COMPANY-2</u>

37.     In or about April 2022, POSTOVOY, acting on behalf of Jove, signed a contract

(Contract No. 04/22-03) with Russian Company-1 to procure microelectronics for Russian Company-1.

38.     On or about March 21, 2023, POSTOVOY, acting on behalf of Jove, and Russian Company-1 executed "Supplementary Agreement #2 to the Contract No. 04/22-03" ("Supplement #2") dated April 20, 2022.

39.     On or about that same day, Co-conspirator-2 sent an email to an email address associated with Russian Company-1. Attached to the email was "Specification 004 to the Contract No. 04/22-03" and a proforma invoice that referenced Contract No. 04/22-03. The specification and invoice were each for 1,080 pieces of a "microcontroller" with part number XEF216-512-TQ128-I20A (the "XMOS Microcontroller"). The specification and invoice were signed by POSTOVOY, and the specification identified Jove as the seller and Russian Company-1 as the buyer.

40.     On or about January 19, 2023, between the execution of Contract No. 04/22-03 and Supplement #2, Co-conspirator-2—acting as the representative of Jove—ordered 1,080 pieces of the XMOS Microcontroller with part number XEF216-512-TQ128-I20A from U.S. Company-2. According to a purchase order on U.S. Company-2 letterhead, the buyer of the items was identified as Co-conspirator-2/Jove, and the item was listed on the purchase order as subject to the EAR under "ECCN 3A991A2." The total on the purchase order was listed as $20,859. The true ultimate end-user of these components was Russian Company-1, a fact not disclosed to U.S. Company-2.

41.     On or about March 24, 2023, Jove, using its Hong Kong-based financial account, wired $20,860 into an account held by an Asia-based affiliate of U.S. Company-2 at Multinational Financial Institution-1 (Hong Kong).

TRANSACTION WITH THE UC COMPANY

42.     On or about September 28, 2022, Co-conspirator-2 sent an email to an employee of Streloy. The email included an attached invoice issued by Jove for 60,000 pieces of a "microcontroller" with partial part number SAK-XC2785X-104F80LR (the "Infineon Microcontroller"). The invoice listed the "bill to" party as Turkish Company-1 and the "ship to" party as "to be confirmed."

43.     On or about November 19, 2022, POSTOVOY sent an email to the UC Company requesting a purchase order for, among other components, 60,000 pieces of the Infineon Microcontroller. On or about January 20, 2023, the UC Company issued a proforma invoice to POSTOVOY for the requested components, including the Infineon Microcontroller. The invoice, which totaled $865,000 ($420,000 for the Infineon Microcontrollers and the balance for other components in the order), included a statement regarding restrictions and prohibitions under U.S. export controls.

44.     POSTOVOY instructed the UC Company to list on the BIS Form 711 ("Statement by Ultimate Consignee and Purchaser") a Hong Kong-based company as the Ultimate Consignee for this order, despite Jove's issuance of the invoice to Streloy for the same part and quantity. The identification of the Hong Kong-based company as the Ultimate Consignee was false, which POSTOVOY knew.

45.     Beginning on or about January 27, 2023, POSTOVOY made seven wire payments totaling $620,000 to the UC Company's account at U.S. Financial Institution-2, located in the United States. The payments came from WowCube's Hong Kong-based account at U.S. Financial Institution-1 and were in partial fulfillment of the proforma invoice sent to POSTOVOY on January 20, 2023.

46.     On or about May 9, 2023, POSTOVOY caused the UC Company to ship a package purporting to contain the Infineon Microcontroller and other parts ordered from the UC Company.

**(Conspiracy to Commit an Offense Against the United States and to Defraud the United States**, in violation of Title 18, United States Code, Section 371.)

## COUNTS TWO through FOUR

**(Export Control Reform Act, in violation of Title 50, United States Code, Section 4819)**

47.     The factual allegations in paragraphs 1 through 14 and 21 through 46 of this Indictment are hereby realleged and incorporated by reference herein.

48.     On or about the dates listed for each count, in the District of Columbia and elsewhere, DENIS POSTOVOY and others known and unknown to the Grand Jury, did knowingly and willfully violate Title 50, United States Code, Section 4819, by exporting, attempting to export, and causing the export and attempted export of goods, as listed below, to Russia, without first having obtained authorization or a license from the U.S. Department of Commerce.

| Count | Approx. Date of Export | U.S. Vendor | Description of Item(s) |
|---|---|---|---|
| 2 | May 23 – June 7, 2022 | U.S. Company-1 | STMicroelectronics STM32G491CCU6 Microcontrollers |
| 3 | May 21, 2023 | U.S. Company-2 | XMOS XEF216-512-TQ128-I20A Microcontrollers |
| 4 | May 9, 2023 | UC Company | Infineon SAK-XC2785X-104F80LR Microcontrollers |

**(Export Control Reform Act**, in violation of Title 50, United States Code, Section 4819)

## COUNTS FIVE through SIX

**(Smuggling Goods from the United States)**

49.     The factual allegations in paragraphs 1 through 14 and 21 through 48 of this Indictment are hereby realleged and incorporated by reference herein.

50.     On or about the dates listed for each count, in the District of Columbia and

elsewhere, the defendant, DENIS POSTOVOY, fraudulently and knowingly attempted to export

and send from the United States the merchandise, articles, and objects as identified in each count,

contrary to the laws and regulations of the United States, to wit, Title 50, United States Code,

Section 4819 and the EAR, and fraudulently and knowingly received, concealed, bought, sold, and

facilitated the transportation, concealment, and sale of such merchandise, articles, and objects,

prior to exportation, knowing the same to be intended for export contrary to such laws and

regulations of the United States.

| Count | Approx. Date of Export | U.S. Vendor | Description of Item(s) |
|---|---|---|---|
| 5 | May 23 – June 7, 2022 | U.S. Company-1 | STMicroelectronics STM32G491CCU6 Microcontrollers |
| 6 | May 9, 2023 | UC Company | Infineon SAK-XC2785X-104F80LR Microcontrollers |

(**Smuggling goods from the United States**, in violation of Title 18, United States Code, Section 554.)

## COUNT SEVEN

(Conspiracy to Commit Money Laundering)

51.     The factual allegations in paragraphs 1 through 14 and 21 through 50 of this

Indictment are hereby realleged and incorporated by reference herein.

52.     Beginning on or about the dates specified below, in the District of Columbia and

elsewhere, the defendant, DENIS POSTOVOY, and others known and unknown to the Grand Jury,

within the venue of the United States District Court for the District of Columbia, did knowingly,

combine, conspire, confederate and agree with each other, and others known and unknown to the

Grand Jury, to violate Title 18, United States Code, Section 1956(a)(2)(A), by transporting,

transmitting, and transferring monetary instruments and funds to and through a place in the United

States from and through a place outside the United States, and from and through a place in the

United States to and through a place outside the United States, to wit, Russia and Hong Kong, with the intent to promote the carrying on of specified unlawful activity, that is, violations of 18 U.S.C. Section 554.

GOALS OF CONSPIRACY

53.     The goals of the conspiracy were:

    a.   To promote the conspirators' illegal business transactions;

    b.   To conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of illegal business transactions; and

    c.   To illegally enrich the conspirators.

MANNER AND MEANS OF CONSPIRACY

54.     At all relevant times during the conspiracy, Vector maintained bank accounts in Russia at Rosbank.

55.     At all relevant times during the conspiracy, POSTOVOY and his companies, including Jove and Wowcube, maintained bank accounts at the Hong Kong branch of U.S. Financial Institution-1.

56.     At all relevant times during the conspiracy, the UC Company maintained bank accounts in the United States at U.S. Financial Institution-2.

57.     Vector's, Wowcube's, and Jove's bank accounts in Russia and Hong Kong were utilized on at least five separate occasions to wire transfer funds into or through the United States in exchange for goods smuggled from the United States.

58.     On or about June 28, 2022, U.S. Financial Institution-1, located in the United States and acting as the intermediary bank for an international wire transfer, received $315,499 from Rosbank in Moscow, Russia. The originator of the transfer was Vektor Grupp (*i.e.*, Vector) and

the beneficiary was the account for Jove at Multinational Financial Institution-1 (Hong Kong). The "remittance information" accompanying the wire transfer was "payment by invoices No. 015 and No. 016" "for goods." This amount matches the sum of the invoices for Specification 16, which concerned the STM Microcontrollers, and a separate Specification to the Contract. U.S. Financial Institution-1 forwarded the $315,499 to the correspondent account of Multinational Financial Institution-1 (Hong Kong) at Multinational Financial Institution-1 (New York).

59.      Beginning on or about January 27, 2023, POSTOVOY made seven wire payments totaling $620,000 to the UC Company's account at U.S. Financial Institution-2, located in the United States. The payments came from WowCube's Hong Kong-based account at U.S. Financial Institution-1 and were in partial fulfillment of the proforma invoice sent to POSTOVOY on January 20, 2023, which concerned the Infineon Microcontroller.

(**Laundering of Monetary Instruments**, in violation of Title 18, United States Code, Section 1956(h).)

**FORFEITURE NOTICE**

60.      The allegations contained in Counts One through Seven of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 28, United States Code, Section 2461(c).

61.      Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of violations of ECRA, Title 50, United States Code, Section 4819; and Smuggling, Title 18, United States Code, Section 554, Defendant POSTOVOY shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation(s). The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense.

62.     The allegations contained in Counts One through Seven of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1). Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, Defendant POSTOVOY shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense.

63.     If any of the property described above, as a result of any act or omission of the defendant:

       a.    cannot be located upon the exercise of due diligence;

       b.    has been transferred or sold to, or deposited with, a third party;

       c.    has been placed beyond the jurisdiction of the court;

       d.    has been substantially diminished in value; or

       e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

*Matthew M. Graves /sm*
Attorney of the United States in
and for the District of Columbia